UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JAMEL STEVENS,

                Plaintiff,

- against -

CITY OF NEW YORK, DEPARTMENT OF
CORRECTIONS, OFFICER GONG,
CAPTAIN POLLARD, and DEPUTY
GASKINS,

                Defendants.

**MEMORANDUM OPINION
& ORDER**

10 Civ. 5455 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        This is a Section 1983 action in which pro se Plaintiff Jamel Stevens alleges that Defendants subjected him to unconstitutional conditions of confinement at the George Motchan Detention Center ("G.M.D.C.") at Rikers Island. Defendants have moved to dismiss, arguing that the conditions alleged by Stevens do not rise to the level of a constitutional violation.

        For the reasons stated below, Defendants' motion to dismiss will be granted.

**BACKGROUND**

        The Complaint alleges that Stevens encountered the following conditions in his jail cell on May 13, 2010 (Cmplt. II(C)):

> I moved to 4-Upper housing (cell # 8), where[] the living conditions did not fit constitutional standards. Ants were all over and there was a garbage bag somewhat covering the window. I tried to close the window but it did not work (which was why the garbage bag was there). I was told by inmates that the window has been that way since January. I asked Officer James to move to another cell, but was told that it[']s the only one vacant in the building. I even told Dept. Gaskins who[] told me that he was too busy. That night I slept, shivering from the rain and cold. The water tasted funny as well. I woke up the next morning with a pain in my chest and went to brush my teeth and the water from the sink was coming out brown (the color of tea). I locked out at 8:30 a.m. and asked Officer Gong shield # 17943 for assistance. She said that she would put another

> work order in.  Later I spoke with Captain Pollard shield # 1683 and he said, "well it[']s almost summertime so consider it as air conditioning.["] Later I went to the clinic for my chest.  I then contacted the OCC inspectors and DOC Health Department, who[] both made a visit to inspect, and did verify the conditions.  The next day the Dept. told officers to move me to cell #7, where[] the exhaust ventilation does not work, the windows were shut and did not have a crank to open it [sic].  I felt that it was retaliation against me, for making a report.

(Cmplt. II(D))  Stevens further alleges that he suffered chest pain as a result of "the nasty conditions [he] was subjected to, with the cold cell with rain pouring in or the brown rust water that I drank all night."  (Cmplt. III)

## DISCUSSION

### I. LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "In considering a motion to dismiss . . . the court is to accept as true all facts alleged in the complaint," Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)), and must "draw all reasonable inferences in favor of the plaintiff."  Id. (citing Fernandez v. Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement,'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 557), and does not provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).

2

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999)). Additionally, "[w]here a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)).

Because Stevens is proceeding pro se, this Court is required to read his complaint liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) ("A document filed pro se is to be 'liberally construed.'"). Accordingly, this Court will construe the Plaintiff's complaint "'to raise the strongest arguments that [it] suggest[s].'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009) (quoting Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)).

## II.   PLAINTIFF HAS FAILED TO PLEAD A CONSTITUTIONAL VIOLATION

Because Stevens has failed to allege conditions that rise to the level of a constitutional violation, the complaint must be dismissed.

### A.   Applicable Law

Construed liberally, Stevens' complaint alleges a deliberate indifference to conditions of confinement claim under the Fourteenth Amendment.[1]  "[I]n order for conditions

---

[1] Stevens does not state whether, as of May 13, 2010, he was a pre-trial detainee or a convicted prisoner. A convicted prisoner is entitled to the protections of the Eighth Amendment's proscription against "cruel and unusual punishment," while a pre-trial detainee held in state

3

of confinement to constitute a violation of the Eighth Amendment, a prisoner must satisfy a two-part test comprised of both an objective and subjective prong." Williams v. Carbello, 666 F. Supp. 2d 373, 378 (S.D.N.Y. 2009) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  First, "the deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities.'" Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, "the prison officials must have acted with deliberate indifference in that they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" Id. (quoting Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994)).

"To satisfy the objective prong, a prisoner must demonstrate that he has been denied basic human needs, such as food, clothing, shelter, medical care, and reasonable safety, or has been exposed to conditions that pose an unreasonable risk of serious damage to his future health." Williams, 666 F. Supp. 2d at 378 (citing Phelps v. Kapnolas, 308 F.3d 180, 185 (2d Cir. 2002)).  "Because society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement' claim." Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir. 1999) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)).

To satisfy the subjective prong, a plaintiff must plead facts demonstrating that a defendant acted with a "'sufficiently culpable state of mind'"; "[i]n prison-conditions cases that

---

custody is protected by the Due Process Clause of the Fourteenth Amendment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009).  "Claims for deliberate indifference to a . . . serious threat to the health or safety of a person in custody should be analyzed under the same standard irrespective of whether they are brought under the Eighth or Fourteenth Amendment," however. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009).  Because Defendants have proffered that Stevens was a pre-trial detainee (see Def. Br. 4 n. 4 ("[Stevens] was a pre-trial detainee at the time of the his [sic] alleged injury and medical treatment")), and because the standard is the same whether Stevens' claims are construed under the Eighth Amendment or the Fourteenth Amendment, this Court will treat Stevens' claims as having been brought under the Fourteenth Amendment.

4

state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 297, 302-03 (1991)). "Defendants 'must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and [they] must also draw the inference.'" Williams, 666 F. Supp. 2d at 378 (quoting Phelps, 308 F.3d at 185-86 (noting that the "deliberate indifference" standard is equivalent to the "recklessness" standard in criminal law)). Deliberate indifference requires more than "mere negligence" – "'ordinary lack of due care for the prisoner's interests or safety'" will not give rise to a constitutional violation. Farmer, 511 U.S. at 835 (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976).

**B.     Analysis**

Defendants argue that "Plaintiff fails to satisfy the objective prong because 1) the conditions described in the Complaint are not, as a matter of law, conditions that constitute an 'unquestioned and serious deprivation of basic human needs or a denial of the minimal civilized measure of life's necessities' and because 2) the Complaint alleges exposure to the alleged unconstitutional conditions for an insufficient length of time to be 'sufficiently serious.'" (Def. Br. 6 (quoting Williams, 666 F. Supp. 2d at 378))  Defendants also argue that Stevens' claims fail to meet the subjective prong, because "[t]he Complaint is completely devoid of any factual allegations that could support a claim that any defendant knew that the alleged uncomfortable temperatures, the brown tap water, or the ants constituted an 'excessive risk to inmate safety' and deliberately chose not to address them." (Id. at 10)  This Court agrees.

Exposure to freezing temperatures may constitute a Fourteenth Amendment violation, see Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (noting that prolonged exposure to freezing cold throughout the winter can constitute an Eighth Amendment violation),

5

Corselli v. Coughlin, 842 F.2d 23, 27 (2d Cir. 1988) (deliberate exposure to bitter cold in cell for three months in fall and winter may constitute cruel and unusual punishment), Wright v. McMann, 387 F.2d 519, 526 (2d Cir. 1967) (allegations that prisoner was, inter alia, "denuded and exposed to the bitter cold of winter" in solitary confinement cell for eleven days, would, if established, constitute cruel and unusual punishment in violation of the Eighth Amendment), but a claim based on exposure must be premised on a threat to health or safety that existed for a prolonged period. See Trammell v. Keane, 338 F.3d 155, 165 (2d Cir. 2003) (affirming summary judgment where plaintiff did not allege that he was "directly exposed for lengthy periods to winter weather," and "there is simply no factual dispute regarding whether the temperature in his cell posed a threat to his 'health or safety'").

Here, Stevens alleges that he was housed in a cell with a broken window – which was "somewhat" covered by a garbage bag – on one rainy night[2] in mid-May. (See Cmplt. II(D))  Stevens does not allege that the temperature was below freezing that night, that he was denied clothing, or that guards had purposefully opened the window to his cell or removed the plastic covering. Indeed, Stevens acknowledges that a plastic garbage bag partially covered the window and that an officer "said that she would put another work order in" to repair the window. (See Cmplt. II(D))  These facts are not comparable – either in terms of severity of conditions or duration of time – to those in cases in which the Second Circuit has found a constitutional violation:

> In Corselli, the prisoner was housed in a cell block with broken windows and the guards had intentionally removed the plastic sheeting that had been installed as an interim measure. See 842 F.2d at 27. The prisoner suffered through months of exposure to freezing temperatures and, as evidence that the temperatures in his

---

[2] Stevens seeks to amend his complaint to allege that he was housed in such conditions for four days. (Dkt. No. 16) As discussed below, assuming arguendo that Stevens was kept in this cell for four days, he still has not alleged a constitutional violation.

6

>  cell were sub-freezing, noted that the water in his toilet often froze. See id. The inmate in Gaston similarly complained that the windows in his cell block were broken and "despite numerous complaints, [they] remained unrepaired for the entire winter, exposing inmates to freezing and sub-zero temperatures." 249 F.3d at 165. Finally, in Wright, the prison guards took the inmate's clothing and, during mid-winter, opened the windows in his cell block, exposing him to sub-freezing temperatures. See 387 F.2d at 521.

Trammell, 338 F.3d at 164-65.

Here, the facts are analogous to those in cases in which courts have found that exposure to cold was not sufficiently severe or prolonged to constitute a constitutional violation. See, e.g., Smith v. Burge, No. 9:03-CV-0955 (LEK/GHL), 2006 WL 2805242, at *7 (N.D.N.Y. Sept. 28, 2006) (finding no Eighth Amendment violation when "at most, Plaintiff was deprived of various property (except for a T-shirt and underwear) for less than one day while confined to a cell that was 'cold' or 'very cold' due to some gallery windows being open in late-March"); Borges v. McGinnis, No. 03-CV-6375 CJS, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26, 2007) (keeping inmate, clothed only in paper gown and slippers, with a thin mattress pad and no blanket, in a room with an open window that reduced the temperature to approximately 50 degrees, for three days, not sufficient to satisfy objective prong of Eighth Amendment violation); Grant v. Riley, No. 89 Civ. 0359 (MBM), 1993 WL 485600, at *4 (S.D.N.Y. Nov. 24, 1993) (confining inmate for three days in an unheated room with a cold wind blowing through a broken window, and denying him a coat, bedding, or blankets for over nine hours, does not rise to an Eighth Amendment violation). In sum, the Court finds that the broken window and the conditions that attended it do not rise to the level of a constitutional violation.[3]

---

[3] Stevens also fails to meet the subjective prong. Although he argues in his opposition brief that Officer Gong's language – that "she would put another work order in" (emphasis added) – demonstrates that "it was already established that the cell was already down" (Pltf. Br. (Dkt. No. 16)), the mere fact that an officer was allegedly aware of the need for a repair does not demonstrate deliberate indifference; indeed, the fact that she said she would put in a work order,

Stevens also alleges that the water in his cell was "the color of tea." (Cmplt. II(D))  "[A]n allegation that prison officials persistently provided only rusty drinking water would satisfy the objective component of an Eighth Amendment claim."  Cruz v. Jackson, No. 94 Civ. 2600 (RWS), 1997 WL 45348, at *7 (S.D.N.Y. Feb. 5, 1997) (citing Helling v. McKinney, 509 U.S. 25, 33 (1993)).  However, "[a]n isolated serving of rusty water would not give rise to an Eighth Amendment claim."  Id.  Here, Stevens has alleged only an isolated incident of exposure to discolored water; the facts here are thus different from those in other cases in which courts have suggested that dirty tap water might constitute a constitutional violation.  See, e.g., Bellezza v. Fischer, No. 05 Civ. 98(DLC), 2006 WL 3019760, at *1, *4 (S.D.N.Y. Oct. 24, 2006) (finding that prison's water supply, which was allegedly the color of "a strong cup of coffee" and tasted like bleach for a period of ten months, "raise[s] the prospect of a constitutional violation"); cf. Liffiton v. Kiszewski, No. 09-CV-994A(F), 2010 WL 2869570, at *5 (W.D.N.Y. July 1, 2010) (when conditions are arguably unconstitutional but plaintiff has limited exposure to such conditions, "courts have held that such limited exposures do not constitute due process violations").  Because Stevens has not alleged facts sufficient to make out a constitutional violation, this action must be dismissed.[4]

### III.  MUNICIPAL LIABILITY HAS NOT BEEN ESTABLISHED

Even if Stevens had succeeded in demonstrating unconstitutional conditions of confinement, he has not made out a basis for municipal liability against Defendant City of New

---

and had apparently already put in a work order to address the problem, indicates the absence of indifference.  Furthermore, Stevens acknowledges that he was moved to a different cell shortly after the "OCC inspectors and DOC Health Department" inspected his cell.  (Cmplt. II(D))

[4] Stevens' allegation concerning the presence of ants in his cell likewise does not make out a constitutional violation, because this allegation does not suggest that Stevens was "exposed to conditions that pose an unreasonable risk of serious damage to his future health."  Williams, 666 F. Supp. 2d at 378.

York.[5] Municipal liability under Section 1983 requires proof that a particular constitutional or statutory violation was the result of an official policy; "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." Monell v. Department of Social Services of City of New York, 436 U.S. 658, 694 (1978). The Second Circuit has explained that a plaintiff "must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officers. Second, the plaintiff must establish a causal connection – an 'affirmative link' – between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). Where a plaintiff can show only "misbehaving officers," id., but has not offered proof of an official policy that led to the constitutional or statutory violation, his claim must fail. Turpin v. Mailet, 619 F.2d 196, 203 (1980) (reversing jury verdict against City in Section 1983 action where plaintiff "fail[ed] to prove any official policy").

Here, the record contains no evidence of an official policy authorizing, sanctioning, encouraging, or promoting the unconstitutional conditions alleged; rather, even if Stevens' claims rose to the level of a constitutional violation, they indicate only "a single incident of unconstitutional activity [which] is not sufficient to impose liability under Monell." City of Oklahoma City v. Tuttle, 471 U.S. 808, 841 (1985); see also Bove, 1999 WL 595620, at

---

[5] Defendant Department of Corrections is not a legal entity and the action must be dismissed against it for that reason. See Echevarria v. Dep't of Corr. Servs. of N.Y. City, 48 F. Supp. 2d 388, 391 (S.D.N.Y. 1999) ("The New York City Charter states that '[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not in that of any agency, except where otherwise provided by law.' Settled case law applying this provision establishes that suits against the DOC are suits against a non-suable entity and are properly dismissed upon that basis." (quoting N.Y. City Charter ch. 17 § 396 (1998))).

\*7 ("'[a] single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not suffice to raise an inference of the existence of a custom or policy.'" (quoting Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993))).[6]

## IV.     PLAINTIFF'S MOTION TO AMEND IS DENIED AS FUTILE

Stevens seeks permission to file an amended complaint. (Dkt. No. 21) The proposed amended complaint differs from the original complaint in that it alleges that, after one night in the cell, he "contacted the OCC inspectors and DOC Health Department whom [sic] visited me two days later and did verify the conditions. The next day after OCC inspectors and health department visited I was moved to cell # 7. . . ." (Id.) Accordingly, Stevens' proposed amended complaint asserts that he was in the cell with the broken window for approximately four days, and that the conditions about which he complains were observed by correctional and Health Department employees.

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts "ha[ve] broad discretion to decide whether to grant leave to amend." Joblove v. Barr Labs., Inc., 429 F.3d 370, 404 (2d Cir. 2005). Leave to amend may properly be denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2007) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Murdaugh v. City of

---

[6] Defendants Gong, Pollard, and Gaskins also argue that Stevens has inadequately alleged their personal involvement in the alleged constitutional violations (Def. Br. 11), which is a "prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (citing Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)). Because this Court finds that no constitutional violation has been alleged, it does not reach this issue.

10

New York, No. 10 Civ. 7218(HB), 2011 WL 1991450, at *2 (S.D.N.Y. May 19, 2011) ("Although under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend complaints should be 'freely given,' leave to amend need not be granted where the proposed amendment is futile." (citations omitted)). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." Hayden v. County of Nassau, 180 F.3d 42, 53 (2d Cir. 1999).

Here, the Court's finding that Stevens has alleged no constitutional violation would be the same whether Stevens was subjected to the complained of conditions for one day or four days. The severity and duration of the complained of conditions are not sufficient to make out a constitutional violation. Accordingly, because the proposed amendment would be futile, leave to amend will be denied.

## **CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 14) is GRANTED. Plaintiff's motion to amend the complaint (Dkt. No. 21) is DENIED as futile, and Plaintiff's application for the Court to request counsel (Dkt. No. 20) is DENIED as moot.

The Clerk of the Court is directed to terminate the motions (Dkt. Nos. 14, 20, 21) and to close this case, and is further directed to mail a copy of this order via certified mail to pro se plaintiff Jamel Stevens, #349-10-00941, G.R.V.C., 09-09 Hazen Street, East Elmhurst, NY 11370.

Dated: New York, New York  
July 22, 2011

SO ORDERED.

_____  
Paul G. Gardephe  
United States District Judge